UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

**UNITED STATES OF AMERICA**

        Plaintiff,

v.        **CASE NUMBER:**    2:22CR00115 GSL

**KYLE L. MIOTKE**

        Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Kyle L. Miotke, submits the following for the Court's consideration at the sentencing herein:

### I. The Sentencing Guidelines

The United States Probation Office has recommended, based on a total offense level of 40, and Criminal History Category I, and the statutory maximum sentence of 30 years, that Mr. Miotke's guideline sentencing range is 292 to 360 months. Neither party has objected to that calculation.

However, the plea agreement submitted to the Court, if accepted, binds the Court to imposing a sentence between the statutory minimum mandatory sentence of 180 months and 240 months [DE 33].

### II. Proposed Conditions of Supervision

The undersigned has reviewed the proposed conditions of supervision with Mr. Miotke. The Defendant has no objections to the proposed conditions of supervision.

## III. Sentencing Factors under 18 U.S.C. § 3553(a) for the Court's Consideration

A.   Family History

Kyle L. Miotke is twenty-two (22) years old. He was born in Englewood, Colorado. Neither of his parents played a significant role in his upbringing. Kyle reported that he had a good childhood, but that conflicts with the reality of his childhood as described by his maternal uncle.

He was raised by his maternal grandparents, Linda and Ricky Williams. Kyle's mother, Elaine Williams, only visited him sporadically, but has begun communicating with him more frequently since his incarceration. Kyle has only recently begun to have any type of relationship with his father, Michael Miotke. His main source of emotional support growing up was provided by his great grandmother, Catherine Morris.

Kyle unfortunately witnessed domestic violence between his grandparents as well as between his mother and her boyfriend. Although his grandparents' household was chaotic, his grandparents did their best to provide Kyle with a stable home environment. Unfortunately, his grandparents did not understand the significant intellectual disabilities that Kyle was dealing with and did not play a significant role in finding or assisting with potential solutions to aid Kyle's development.

Kyle was devastated by the deaths of his grandparents in June 2021 and January 2022. It left him without the only source of stability that he had in his life. At the time of his arrest for the instant offense, Kyle was living with his maternal uncle, Anthony Williams, who due to his own limitations and issues provided little oversight for Kyle.

Kyle is single and has no children. His family remains supportive of him (Exhibit A).

2

B.   Offense Conduct

Kyle has demonstrated clear and unequivocal acceptance of responsibility for his conduct related to this offense. Kyle agreed to transport D.B., his seventeen (17) year old female neighbor, to Kansas and Indiana so that she could visit her boyfriend and ex-boyfriend. It was agreed that D.B. would accompany Kyle so that he could also meet MV1 in Lafayette, Indiana, during this trip.

At the time of his arrest in Nebraska, Kyle cooperated with law enforcement and informed the patrol office that MV1 was hiding in his vehicle. Kyle was compliant with being interviewed by law enforcement and provided truthful information regarding his conduct as it related to MV1.

MV1 shared with Kyle her own significant history of sexual abuse and her feeling that she could no longer tolerate living with her sister. MV1 told Kyle that she planned to run away with or without his help. Kyle and MV1 agreed that he would pick her up.

In her forensic interview, MV1 identified Kyle as her "boyfriend" and indicated that her doll was her child and she intended to raise it with Kyle.

While not excusing or minimizing the significance of his conduct in this matter, Kyle because of his intellectual disabilities and his level of functioning believed he was helping MV1 escape her intolerable home situation and did not fully appreciate the inappropriateness of his conduct with MV1.[1]

Although Kyle intellectually functions at a level much closer to MV1, it does not excuse his conduct or afford him a legal defense.

---

1 Kyle Miotke underwent a psychological evaluation conducted by Warren W. Sibilla, Jr. Ph.D. which has been filed under seal as "Exhibit A" which will be referenced as "Sealed Exhibit A" herein.

### C. Education and Employment

Kyle attended Chaparral High School through the 11th grade. He completed an online program and received his high school diploma from Colorado Connections Academy in June 2022. While Kyle has his high school diploma, a review of his academic records clearly show that he is not functioning academically anywhere near the 12th grade level (Exhibit B).[2]

Kyle was diagnosed with autism spectrum disorder[3] and had an individualized education plan (IEP) for his special education classes. His cognitive testing demonstrated that he has considerable weaknesses in perceptual reasoning and working memory (Exhibit B). Kyle has significant difficulty in processing speed deficits in reading, writing, and mathematics, and as a result he required individualized support as well as a modified curriculum to meet his unique learning needs (Exhibit B).

Kyle's IEP for the 7th grade showed that he was working toward 3rd grade benchmarks and that his reading comprehension rate was 50% when reading 2nd and 3rd grade level books. Kyle's IEP for his freshman year showed that he received specialized instruction within the moderate needs and significant support needs programs to meet his unique learning needs. This included over 20 hours of assistance per week being provided by both a significant support needs teacher (SSN) and a learning specialist (Exhibit B).

During his freshman year, Kyle had extensive absences and began hiding in the bathroom due to extreme anxiety (Exhibit B). To provide him with a sense of safety, Kyle was supervised during passing period and lunch (Exhibit B).

Kyle's educational records also demonstrate that there was never a behavioral plan

---

[2] Kyle Miotke's education records were reviewed and summarized by Teacher of Service/Paraprofessional Christine Troutman.
[3] Sealed Exhibit A confirms this diagnosis.

4

written for Kyle which suggests that he did not have behavioral problems while in school (Exhibit B). This is also supported by Kyle's teachers indicating that he was respectful and helpful to his peers and classmates (Exhibit B).

Kyle was recommended for the Bridge Program after completing high school, so that he could learn the skills necessary to be independent (Exhibit B). Unfortunately, his guardians did not see the importance of this program.

Kyle is most comfortable communicating and interacting with people near his intellectual ability and there is no indication that he was ever harmful or malicious (Exhibit B). He liked to be helpful, but Kyle's thought process and understanding is not that of a typical male his chronological age (Exhibit B).

Despite his significant intellectual disabilities, Kyle has been employed in the past at Coca-Cola and FedEx. By all accounts, he is a hard worker. At the time of his arrest, Kyle was employed as a laborer at JDog Junk Removal & Hauling Services. In addition, he provided lawncare and snow removal in his neighborhood.

D. Physical and Mental Health

Kyle is in relatively good physical health, despite being born prematurely. He needs eyeglasses but has been without them since his incarceration. Kyle has asthma that is managed with an inhaler. He may also have epilepsy, high blood pressure and arthritis in his left knee but these issues require further medical diagnosis.

Kyle has significant mental health issues. Since his incarceration, Kyle has suffered from major depression and generalized anxiety which are managed with medication (Sealed Exhibit A). He also attempted suicide on one occasion and reported being sexually assaulted while incarcerated (Sealed Exhibit A).

As noted above, he suffers from autism. His IQ places him in the impaired range of functioning (Sealed Exhibit A). While chronologically age 21, Kyle truly is a child in a man's body, with his intellectual functioning at or about the fifth-grade level (Sealed Exhibit A).

Kyle would benefit from a mental health evaluation and treatment to address these issues.

### E.     Substance Abuse History

Kyle has no history of substance usage.

### F.     Pretrial Detention

Kyle has been continuously detained since his arrest in Nebraska on June 15, 2022. Kyle has been detained in the Porter County Jail since January 3, 2023. He has had no disciplinary issues while in pretrial detention.

As noted above, Kyle did have one suicide attempt while in the Porter County Jail and continues to be closely monitored.

## IV. Defendant's Recommended Sentence

Under the circumstances, a sentence of 180 months followed by 15 years of supervised release, is a reasonable and appropriate sentence under the factors enumerated in 18 U.S.C. § 3553.

Kyle would request the following recommendations: 1) that he be incarcerated as close to Colorado, as possible, to allow for family visitation, with consideration of placement at FCI Englewood; 2) that he be given credit for any time already served from June 15, 2022 to present; 3) that he be allowed to participate in a vocational training program; 4) that he be allowed to participate in the prison industries program; 5) that he receive a mental health evaluation and treatment; 6) that he be considered for placement in the residential sex-offender treatment

program; and 7) that he be allowed consideration for placement in the residential re-entry program.

*Dated:*   July 10, 2024

                                          Northern District of Indiana
                                          Federal Community Defenders, Inc.

                        By:    /s/ Peter L. Boyles
                              Peter L. Boyles, Staff Attorney
                              2929 Carlson Drive, Suite 100
                              Hammond, IN 46320
                              Phone: (219) 937-8020
                              Email: peter_boyles@fd.org

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on July 10, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

                                                          s/ Peter L. Boyles